UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
 JAMIE ALLEYNE-MORRIS,

                                                    Plaintiff,            **Case No.**


                          -against-                                      **COMPLAINT**


 FOURTH WALL RESTAURANTS, LLC d/b/a
 QUALITY BRANDED, FRENCH ONION SOUP, LLC                                 **JURY TRIAL DEMANDED**
 d/b/a QUALITY BISTRO, and RODRIGO RODRIGUEZ,

                                                    Defendants.
-------------------------------------------------------------------------------X

        Plaintiff, JAMIE ALLEYNE-MORRIS ("Plaintiff"), by and through her attorney, LF

LAW PLLC, hereby complains of the Defendants upon information and belief, as follows:

                              **NATURE OF THE CASE**

     1.    This is a civil action to remedy harms caused by the discrimination of Defendants in

violating Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e

et seq., 42 U.S.C. § 1981, the Americans with Disability Act ("ADA"), 42 U.S.C. § 12111 et

seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 et seq., and

the New York City Human Rights Law ("NYCHRL"), Administrative Code of City of NY § 8-

102 et seq.

                            **JURISDICTION AND VENUE**

     2.    This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. § 2000e

et seq., 42 U.S.C. § 1981, 42 U.S.C. § 12111 et seq., and 28 U.S.C. §§ 1331 and 1343.

     3.    This Court has supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL

claims pursuant to 28 U.S.C. § 1367.  The claims under the State and City Human Rights Law

statutes are intrinsically related to the same facts and circumstances giving rise to the Federal law claims.

4.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391 as Defendants respective principal place of business are within the Southern District of New York, and the events or omissions giving rise to the claims occurred in the Southern District of New York.

5.    Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 21, 2025.  Her charges were assigned Nos. 520-2025-04913 and 520-2025-04915.

6.    On April 30, 2025, Plaintiff received two Notice of Right to Sue Letters from the EEOC, for the respective charges.

**PARTIES**

7.    Plaintiff is a natural person who resides in the State of New York, County of Kings.

8.    Plaintiff is a black and/or dark-skinned female.

9.    Plaintiff's sexual orientation is heterosexual, and identifies as a straight female.

10.    At all relevant times herein, Plaintiff was and is an "employee" of the Defendants, within the meaning of all relevant Federal, State, and local laws.

11.    At all relevant times herein, Defendant, French Onion Soup, LLC was and is a Foreign Limited Liability Company, formed and registered in the state of Delaware, and permitted to do business in New York State.

12.    Upon information and belief, Defendant, French Onion Soup, LLC was and is doing business as Quality Bistro ("Quality Bistro" or the "Restaurant").

13.    Upon information and belief, Defendant, Quality Bistro has its principal place of business located at 120 West 55th Street, New York, New York 10019.

14. At all relevant times herein, Quality Bistro employs twenty-five (25) or more employees.

15. At all relevant times herein, Quality Bistro was and is Plaintiff's "employer" within the meaning of all relevant Federal, State, and local laws.

16. Upon information and belief, Quality Bistro, operated and continues to operate as an upscale restaurant in New York City.

17. Upon information and belief, at all relevant times herein, Defendant Fourth Wall Restaurants, LLC was and is a domestic Limited Liability Company, formed and licensed to do business in the State of New York.

18. Upon information and belief, Defendant, Fourth Wall Restaurants, LLC was and is doing business as Quality Branded ("Quality Branded").

19. Upon information and belief, Defendant, Quality Branded has its principal place of business located at 460 Park Avenue, 12th Floor, New York, New York 10022.

20. Upon information and belief, at all relevant times herein, Quality Branded employs twenty-five (25) or more employees.

21. Upon information and belief, at all relevant times herein, Quality Branded was and is Plaintiff's "employer" within the meaning of all relevant Federal, State, and local laws.

22. Upon information and belief, Quality Branded owned and/or managed, and continues to own and/or manage, several upscale restaurants in New York City, including Quality Bistro.

23. Upon information and belief, Defendant, Rodrigo Rodriguez ("Rodriguez") is resident of the State of New York.

24. Upon information and belief, Defendant Rodriguez, is a light-skinned Hispanic male.

25. Upon information and belief, Rodriguez' sexual orientation is homosexual, and

identifies as a gay male.

26. Upon information and belief, at all relevant times herein, Rodriguez was a Regional Director of Operations at Quality Branded.

27. At all relevant times herein, Plaintiff's supervisors and/or managers reported to Defendant Rodriguez.

28. Upon information and belief, at all relevant times herein, Rodriguez had supervisory authority over Plaintiff and had the ability to hire, fire and/or affect the terms and conditions of Plaintiff's employment or to otherwise influence the decisionmaker(s) of the same.

## FACTS

### BACKGROUND INFORMATION

29. On or about January 17, 2023, Plaintiff began her employment at Quality Bistro as the Maître D'. In this role, she was tasked with enhancing the dining experience by overseeing service quality, managing reservations, leading front-of-house operations and supervising the hostess team.

30. At the start of her employment at Quality Bistro, the General Manager was Steve Raysor ("Raysor").

31. On or about February 3, 2023, Plaintiff was assaulted by a belligerent patron who grabbed her without provocation and screamed recklessly in her face after he and his party were unable to secure a table at the restaurant.

32. The day following the assault, Plaintiff spoke of the attack with Raysor since he was present during the assault, seeking a swift response to address the disturbing actions which took place the evening before. However, there was no accountability from Quality Bistro for the assault that took place.

33.    On or about April 14, 2023, Plaintiff suffered an injury at the restaurant due to a wet floor, which caused her to slip forward.  Plaintiff broke the fall but landed painfully on her hands and knees.  As a result of this slip and fall, Plaintiff sustained an injury to her wrist, requiring extensive medical care, including surgery on her thumb on or about September 2023.

34.    Despite these challenges, Plaintiff continued to excel in her role as Maître D', pleasing staff, management and patrons alike.  She excelled extremely well that within four months of employment at Quality Bistro, she was offered a promotion to the role of Guest Relations Manager on or about May 14, 2023, which she accepted shortly thereafter.

35.    As a manager, Plaintiff became a salaried and fulltime employee with Quality Bistro's parent company, Quality Branded, and had more direct interactions with Rodriguez.

36.    In her new role Plaintiff was responsible for ensuring that each guest received outstanding service by providing a friendly, welcoming, and professional environment, providing management support for the front door crew and Maître D', and maintain the day-to-day operations of the restaurant's facilities. In her new role as Guest Relations Manager, Plaintiff quickly adapted to her expanded tasks and responsibilities.

RACIAL DISCRIMINATION

37.    On or about January 16, 2023, the day before Plaintiff's first day of work at Quality Bistro, Raysor instructed her of the strict workplace dress code for front door personnel, which required the staff member to wear "all black with a black blazer."

38.    Raysor reiterated this directive in an email to Plaintiff highlighting the "Standard Operating Procedures" which were compulsory for hosts/hostesses working at the Restaurant.

39.    According to Raysor and Quality Bistro's written directives, all hosts/hostesses were instructed "to wear the mandatory all black complete with a blazer."

40.    Plaintiff complied with the dress code directives without any objections.

41.    After Plaintiff was promoted to the Guest Relations Manager position, she continued to dress professionally, adhering to the strict dress code policy, in wearing a blazer with her attire.

42.    As a front of the house manager, Plaintiff observed that the strict dress code policy which was supposed to be mandatory and standard operating procedure, was not being adhered to by the Maître D' and other hostesses.

43.    Between May 2023 to July 2024, Plaintiff filed many formal complaints with upper management at Quality Bistro and Quality Branded regarding the Maître D' and hostesses' failure to follow the strict dress code, but no remedial action was taken by the Restaurant's management or by Quality Branded.

44.    Upon information and belief, the Maître D' and others on the hostess team who were not compliant with the strict dress code, were either White/Caucasian or light-skinned Hispanic.

45.    Plaintiff experienced and observed the disparity in treatment of workers by Defendants, as she was treated less favorably and less well on the basis of her race and/or skin color.

46.    Plaintiff was appalled, threatened, embarrassed and humiliated as a result of Defendants' disparate treatment of workers.

47.    On or about January 19, 2024, Plaintiff received an email from Damien Good ("Good"), Director of Hospitality at Quality Bistro, requesting a new photo for the company's manager lookbook.

48.    According to Good's email, the photo needed to be in a "professional setting, [and in] professional clothing."

49.    Plaintiff promptly complied with Good's request.

50.    Nearly one month after receiving Good's email, Plaintiff observed that the manager's

lookbook contained numerous photos of managers who were not dressed professionally and were not in a professional setting.

51. On or about February 13, 2024, Plaintiff replied to Good's email inquiring about the vast number of individuals in the manager's lookbook that were not in compliance with the January 19th email, as she observed many photos of individuals wearing t-shirts, some individuals with pets, and even one photo of an individual that was smoking.

52. Upon information and belief, the individuals with photos that did not comply with Good's directives, were either White/Caucasian or light-skinned Hispanic.

53. Upon information and belief, Good failed to reply to Plaintiff's February 13th email.

54. Plaintiff was appalled, threatened, embarrassed and humiliated as a result of Defendants' disparate treatment of workers.

55. Plaintiff experienced and observed the disparity in treatment of workers by Defendants, as she was treated less favorably and less well on the basis of her race and/or skin color.

<u>HOSTILE WORK ENVIRONMENT</u>

56. Upon information and belief, for the majority of 2023, the Maître D' was White/Caucasian and members of the hostess team were light-skinned Hispanics.

57. Upon information and belief, on or about Spring 2023, Destiny Greggs ("Destiny") was hired by Quality Bistro, as a member of the hostess team.

58. Upon information and belief, Destiny is a Black and/or dark-skinned female.

59. Throughout Spring 2023, Plaintiff observed Rodriguez speaking to Destiny in a cold and abrasive tone, and at times, speaking to her in a very demeaning manner and was overly critical of her actions.

60. During this same period, Plaintiff observed that Rodgriguez did not speak to other

members of the hostess team in the same demeaning manner, as a result of committing the same or similar infractions.

61. On or about May 2023, Destiny reported to Plaintiff that she felt that she was being subjected to discrimination by Rodriguez, the Maître D', and other members of the hostess team.

62. On or about May 2023, Plaintiff witnessed Rodriguez stating that she "looked like a man", in referring to Destiny.

63. Plaintiff was offended and horrified by Rodriguez' statement, as the comment lends itself to gender stereotypes of women.

64. On or about June 2023, Plaintiff witnessed Rodriguez stating that he hated "her look", in referring to Destiny.

65. Rodriguez did not make the same and/or similar comments with regards to any other member of the hostess team.

66. Once again, Plaintiff was offended and horrified by Rodriguez' statement, as Destiny was only Black and/or dark-skinned member of the hostess team.

67. Plaintiff was appalled, threatened, embarrassed and humiliated by Rodriguez's comments, as it singled out the only Black and/or dark-skinned member of the hostess team.

68. Upon information and belief, Destiny was terminated on or about July 2023.

69. Plaintiff witnessed Defendants' failure to retain Destiny, as more disparity in treatment and punishment of Black and/or dark-skinned workers, who were punished more severely for the same infractions committed by White and/or light-skinned Hispanics.

70. Plaintiff was saddened, shocked and threatened by the termination, as Destiny was only Black and/or dark-skinned member of the hostess team.

71. On or about Summer 2023, on separate occasions, Plaintiff observed members of the

Restaurant's management team, including Raysor, providing the Maître D' with support and comfort, in dealing with the stressors of a busy and very active upscale restaurant.

72. Upon information and belief, Sarah England ("England"), the Maître D', is a White/Caucasian female.

73. On or about Summer 2023, Plaintiff reported the same stressors and frustrations of a busy and active upscale restaurant with Raysor, who responded jokingly that "you're a black woman, you can handle it!"

74. Plaintiff was appalled, threatened, embarrassed and humiliated by Raysor's comments, as it demonstrated disparate and preferential treatment of workers.

75. Plaintiff experienced and observed the disparity in treatment of workers by Defendants, as Black and/or dark-skinned workers were treated less favorably and less well on the basis of their race and/or skin color.

76. Upon information and belief, at all relevant times herein, Defendants had a strict policy regarding cash tips. Pursuant to said policy, any employee caught pocketing a cash tip, when the tip was already provided for via credit card payment, was subject to termination.

77. Upon information and belief, on or about Spring 2023, Plaintiff became aware that two members of the Restaurant's waitstaff were discovered by Defendants, respectively, for pocketing a cash tip ("cash tip infraction"), in addition to the tip that was provided for via credit card payment.

78. Upon information and belief, the two members of the waitstaff identified for the cash tip infractions were Maia Morgan ("Maia"), a Black and/or dark-skinned female, and Edmar Barrios ("Barrios"), a light-skinned Hispanic male.

79. Upon information and belief, on or about April 2023, Defendants terminated Maia as a

result of a cash tip infraction.

80. Upon information and belief, on or about July 2023, Defendants retained Barrios after the discovery of his cash tip infraction.

81. Upon information and belief, on or about Fall 2023, Quality Branded promoted Barrios, by transferring him to higher tiered restaurant in their portfolio of restaurants, in light of his cash tip infraction.

82. The disparity in outcomes of the respective waitstaff members had a chilling effect on Plaintiff, threatening her employment at Quality Branded.

83. Plaintiff was appalled, threatened, embarrassed and humiliated with Barrios retaining his employment and ultimately being transferred and/or promoted, as it demonstrated Defendants' disparate and preferential treatment of certain workers.

84. Plaintiff experienced and observed the disparity in treatment of workers by Defendants, as Black and/or dark-skinned workers were treated less favorably and less well on the basis of their race and/or skin color.

85. Upon information and belief, on or about September 2023, Defendants received an anonymous letter regarding the recent cash tip infractions. The email also highlighted the animosity developing within the waitstaff, as preferential schedules and dinner events ("buyouts") were being given to certain waitstaff members as a result of the individuals' race and/or skin color and sexual orientation.

86. Upon information and belief, the anonymous letter caused a stir within members of the waitstaff, including two members that got into a verbal spat.

87. Plaintiff continued to experience and observe the disparity in treatment of workers by Defendants in 2024, as Black and/or dark-skinned workers were treated less favorably and less

well on the basis of their race and/or skin color.

88.    Upon information and belief, assistant general manager, Noah Burcak's ("Burcak") sexual orientation is homosexual, and identifies as a gay male.

89.    Upon information and belief, general manager, Edwin Torres' ("Torres") sexual orientation is homosexual, and identifies as a gay male.

90.    Upon information and belief, on or about January 2024, Torres replaced Rayzor as general manager at the Restaurant.

91.    Upon information and belief, on or about February 2024, after Torres was hired, Plaintiff observed Burcak stating that "we gays run this place."

92.    Plaintiff was stunned, threatened, and appalled by Burcak's comment.

93.    Upon information and belief, on or about Spring 2024, Plaintiff observed the only Black and/or dark-skinned server, Oral Coleman ("Oral") finally receiving an opportunity to work a buyout, although he was more experienced and had more seniority, than many others who were given the opportunities before him.

94.    Upon information and belief, on or about July 2024, Plaintiff observed the only Black and/or dark-skinned bartender, Kiwon Pierson ("Kiwon") continue to receive less favorable scheduling and no buyout opportunities, even though he continued to receive rave reviews for his outstanding service to patrons, was more experienced and had more seniority, than many others who were given favorable schedules and buyout opportunities.

95.    Upon information and belief, on or about August 5, 2024, Plaintiff became aware of Quality Branded's treatment of Black and/or dark-skinned employees at their other restaurants, including the restaurant Bad Roman, in which well-qualified black and/or dark-skinned servers were not given the opportunities for preferable schedules and/or buyout events.

96. Plaintiff was appalled, threatened, embarrassed and humiliated because of Defendants behavior, as it demonstrated disparate and preferential treatment of a certain group of workers.

SEXUAL HARASSMENT

97. On or about July 2023, one of Quality Bistro's male server assistants, Roberto Chapul ("Chapul"), referred to Plaintiff as "beautiful" and "sexy" on numerous occasions.

98. Chapul's comments were unwanted and unwelcomed.

99. Plaintiff was disgusted, humiliated and embarrassed by the comments.

100. On or about July 2023, Chapul touched Plaintiff without her consent several times during their shift.

101. Plaintiff was saddened, uncomfortable and threatened by the actions.

102. In the same month, Chapul made similar unwanted and unwelcomed statements to Plaintiff.

103. Plaintiff was frustrated, alarmed and uncomfortable.

104. In order to prevent a further escalation of Chapul's behavior, Plaintiff pulled him aside as his superior, to inform him that the unwelcomed and unwanted comments were inappropriate and unprofessional.

105. A few days later, Chapul became cold, distant, rude and uncooperative to Plaintiff in retaliation for opposing the unwanted and unwelcomed comments and conduct.

106. On or about September 7, 2023, Plaintiff reported the aforementioned comments and actions of Chapul to the human resources staff at Quality Bistro and management at Quality Branded.

107. Quality Branded never interviewed Plaintiff after making the complaint.

108. Quality Branded took no remedial actions as result of the complaint.

109. Plaintiff was disheartened, threatened and in disbelief, as she felt her authority as a supervisor was undermined and unsupported by Defendants lack of action.

110. Chapul continued to act defiant and insubordinate towards Plaintiff in retaliation for opposing the unwanted and unwelcomed comments and conduct.

111. On or about December 22, 2023, Plaintiff reported Chapul's insubordination to Raysor and other management at Quality Branded.

112. Again, Defendants took no remedial actions to address Plaintiff's subsequent complaint.

113. Plaintiff was disheartened, threatened and in disbelief, as she felt her authority as a supervisor was undermined and unsupported by Defendants lack of action.

114. On or about January 28, 2024, while attending a Quality Branded holiday party, Rodriguez reported to Plaintiff that he was a longtime VIP member at a venue called The Box.

115. During this holiday party, Rodriguez shared a story of a "little person" having sexual intercourse with a transgendered woman on stage.

116. Rodriguez' story was unwelcomed and unwanted.

117. Plaintiff was disgusted, humiliated and embarrassed by Rodriguez' story.

118. On or about July 19, 2024, Gerardo Gomez ("Gomez"), a server assistant, touched Plaintiff without consent, by rubbing her waist every time he approached her.

119. The contact was unwelcomed and unwanted.

120. On or about August 12, 2024, Plaintiff reported Gomez' actions to Quality Branded's human resource office.

121. Upon information and belief, Quality Branded performed a shoddy and unthorough investigation, which resulted in an unsubstantiated complaint.

122. Plaintiff was disheartened, threatened, and in disbelief of Defendants' actions.

DISABILITY DISCRIMINATION

123. On or about June 24, 2024, after concluding a pre-shift meeting with staff members, Plaintiff fell flat on her back due to a steel table extender which was improperly left on the floor.

124. As a result of the fall, Plaintiff was in immense pain.

125. Plaintiff continued to meet her work obligations and worked the remainder of her shift.

126. Despite her injuries, Plaintiff remained on the work schedule, working additional days thereafter.

127. On or about July 6, 2024, Plaintiff called out of work due to the severe pain that she was experiencing in her back and her neck.

128. Shortly thereafter, Plaintiff visited a specialist for the back pain, who in turn, referred her to obtain x-rays for further diagnosis.

129. On or about July 16, 2024, Plaintiff received x-rays for her back and her neck.

130. On or about July 23, 2024, Plaintiff met with a pain specialist, who prescribed her with a treatment plan, which included pain management medication and physical therapy three times a week.

131. Plaintiff remained on the work schedule and continue to show up for work.

132. On or about July 26, 2024, Plaintiff called out from work due to the immense pain she was suffering in her neck and her back.

133. On or about July 26, 2024, Plaintiff went on out on Family and Medical Leave Act ("FMLA") Leave.

134. On or about July 31, 2024, Plaintiff provided a letter from her physician to Defendants indicating that she was totally disabled from the date of the letter until August 31, 2024.

135. On or about August 26, 2024, Plaintiff submitted an additional letter to Defendants

from her physician, which further indicated that she was totally disabled from the date of the letter until September 26, 2024 due to the "pain in [Plaintiff's] neck, left and right shoulder, along with her mid and lower back."

136. On or about September 24, 2024, Susan Spikes ("Spikes"), Vice President of Human Resources at Quality Branded, informed Plaintiff that her FMLA leave was exhausted and that Quality Branded intended to search for a replacement Guest Relations Manager.

137. On or about September 30, 2024, Spikes informed Plaintiff that her role as Guest Relations Manager was replaced and that she was terminated.

138. Defendants failed to extend Plaintiff's medical leave as a reasonable accommodation.

139. Defendants terminated Plaintiff's employment without engaging in the interactive process and cooperative dialogue with her.

140. Defendants terminated Plaintiff's employment because of her disability, although she was well qualified for the position.

<u>RETALIATION</u>

141. During the relevant period, Plaintiff made several internal complaints to Rodriguez and others in Defendants' upper management, regarding the unequal treatment of workers and hostility towards Black and/or dark-skinned workers.

142. On or about February 28, 2024, Plaintiff informed Spikes and Rodriguez, that she feared filing a formal complaint opposing discrimination "due to fear of retaliation."

143. Additionally, on or about February 28, 2024, Plaintiff stated that as "one of the few female black managers, the use of [certain] words…to describe [her are] misleading and can be viewed as coded language", due to the stereotype of Black females being depicted as "angry black women."

144. Moreover, Plaintiff clearly urged Defendants "to kindly consider how implicit bias is inherent in the workplace and can have long term effects on an employee's workplace experience and health", including hers.

145. Nonetheless, Defendants did not take sufficient actions to investigate and/or address Plaintiff's complaints, although she adamantly opposed discrimination.

146. Upon information and belief, at all relevant times herein, Joel Oliver ("Joel"), a Senior Guest Relations Manager at Quality Bistro's sister restaurant, Quality Meats, trained other guest relations managers at other Quality Branded restaurants.

147. On or about March 2024, Joel informed Plaintiff that all Guest Relations Managers were not required to work until closing ("closing shifts") at Quality Branded restaurants.

148. Upon information and belief, Plaintiff was frequently scheduled to work the closing shifts at the Restaurant.

149. Upon information and belief, Plaintiff was one of the few, if not the only, Black and/or dark-skinned females, employed by Quality Branded as a Guest Relations Manager.

150. On or about June 24, 2024, Plaintiff voiced her frustrations to interim assistant general manager, Tiffany Le ("Le") as she felt that she wasn't receiving any managerial support, and compliance from the servers and server assistants, because she was the only Black and/or dark-skinned female front of the house manager at the Restaurant.

151. Plaintiff clearly opposed unlawful discrimination and reported the same to Le.

152. Defendants did not provide any support to Plaintiff, let alone investigate or address her concerns.

153. On or about July 25, 2024, Plaintiff reiterated her claims of Defendants' preferential treatment of others and her opposition of unlawful employment practices to Torres, when she

questioned why she was the only Guest Relations Manager frequently scheduled to work the closing shifts.

154. Upon information and belief, at the relevant times herein, Plaintiff was the only remaining Black and/or dark-skinned female front of the house manager at the Restaurant.

155. On or July 25, 2024, Plaintiff reiterated her claims of Defendants' preferential treatment of others and her opposition of unlawful employment practices to Rodriguez, when Plaintiff specifically questioned why the strict dress code policy and related grooming policy wasn't being adhered to by England, in which Rodriguez could not provide a response, and attempted to switch the subject matter.

156. Additionally, when Plaintiff questioned why she was the only Quality Branded Guest Relations Manager required to close the Restaurant on each shift, Rodriguez could not provide a satisfactory response, and again, attempted to switch the subject matter.

157. Defendants performed a shoddy investigation of Plaintiff's complaint against Gomez, as a result of Plaintiff opposing the unlawful employment practices of the Defendants.

158. Defendants ignored the August 26, 2024 letter from Plaintiff's physician seeking additional medical leave as a reasonable accommodation, so that she could properly heal and recover from her workplace injuries.

159. Less than one week after Plaintiff's FMLA expired, Defendants terminated her employment.

160. Defendants terminated Plaintiff's employment as a result of Plaintiff exercising her protected rights under Federal, State and local laws.

161. But for Plaintiff exercising her protected rights under Federal, State, and local laws, Defendants would not have terminated Plaintiff's employment.

162.   Defendants terminated Plaintiff's employment as a result of Plaintiff opposing unfair and unequal treatment of workers at the Restaurant.

163.   But for Plaintiff opposing unfair and unequal treatment of workers at the Restaurant, Defendants would not have terminated Plaintiff's employment.

164.   Quality Branded terminated Plaintiff's employment as a result of Plaintiff opposing Defendants unlawful employment practices.

165.   But for Plaintiff opposing Defendants' unlawful employment practices at Quality Branded and Quality Bistro, her employment would not have terminated.

## COUNT I

### RACE DISCRIMINATION IN VIOLATION
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,
### 42 U.S.C. § 2000e et seq.
### (As to Quality Bistro and Quality Branded)

166.   Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation contained in the above paragraphs of this Complaint as fully set forth in this paragraph of the Complaint.

167.   Defendants discriminated against Plaintiff on the basis of her race (Black/African-American) in violation of Title VII by treating her differently from and less favorably than similarly situated employees, and subjecting her to disparate working conditions and disparate terms and conditions.

168.   The discriminatory actions of Defendants were intentional, deliberate, willful, malicious, reckless, invidious, repugnant and conducted in callous disregard of the rights of Plaintiff.

169.   Plaintiff has been harmed and continues to suffer harm as a direct and proximate result of Defendants' unlawful conduct.  Plaintiff suffered and continues to suffer a substantial loss of

income including, but not limited to wages, social security and other benefits.

170. Additionally, Plaintiff has suffered the indignity of discrimination, the invasion of the right to be free from discrimination, and great humiliation, which has resulted in serious stress and mental anguish.

171. Defendants' conduct has caused outrage, severe anxiety, harm to her employability and earning capacity, painful embarrassment, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

## COUNT II

### RACE DISCRIMINATION IN VIOLATION OF
### 42 U.S.C. § 1981
### (As to Quality Bistro and Quality Branded)

172. Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation contained in the above paragraphs of this Complaint as fully set forth in this paragraph of the Complaint.

173. 42 U.S.C. § 1981 guarantees persons of all races the same right to make and enforce contracts, regardless of race. The term "make and enforce" contracts include the making, performance, modifications, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

174. By the acts and conduct described above, Defendants engaged in illegal intentional racial discrimination against Plaintiff in violation of 42 U.S.C. § 1981.

175. The discriminatory actions of Defendants were intentional, deliberate, willful, malicious, reckless, invidious, repugnant and conducted in callous disregard of the rights of Plaintiff.

176. Plaintiff has been harmed and continues to suffer harm as a direct and proximate result

of Defendants' unlawful conduct.  Plaintiff suffered and continues to suffer a substantial loss of income including, but not limited to wages, social security and other benefits.

177.   Additionally, Plaintiff has suffered the indignity of discrimination, the invasion of the right to be free from discrimination, and great humiliation, which has resulted in serious stress and mental anguish.

178.   Defendants' conduct has caused outrage, severe anxiety, harm to her employability and earning capacity, painful embarrassment, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

## COUNT III

### RACE DISCRIMINATION IN VIOLATION OF
### NEW YORK STATE HUMAN RIGHTS LAW
### N.Y. Exec. Law § 296 et seq.
### (As to all Defendants)

179.   Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation contained in the above paragraphs of this Complaint as fully set forth in this paragraph of the Complaint.

180.   Defendants discriminated against Plaintiff on the basis of her race (Black/African-American) in violation of the New York State Human Rights Law by treating her differently from and less favorably than similarly situated employees, and subjecting her to disparate working conditions and disparate terms and conditions.

181.   The discriminatory actions of Defendants were intentional, deliberate, willful, malicious, reckless, invidious, repugnant and conducted in callous disregard of the rights of Plaintiff.

182.   Plaintiff has been harmed and continues to suffer harm as a direct and proximate result of Defendants' unlawful conduct.  Plaintiff suffered and continues to suffer a substantial loss of

income including, but not limited to wages, social security and other benefits.

183.    Additionally, Plaintiff has suffered the indignity of discrimination, the invasion of the right to be free from discrimination, and great humiliation, which has resulted in serious stress and mental anguish.

184.    Defendants' conduct has caused outrage, severe anxiety, harm to her employability and earning capacity, painful embarrassment, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

## COUNT IV

### RACE DISCRIMINATION IN VIOLATION OF
### NEW YORK CITY HUMAN RIGHTS LAW
### ADMINISTRATIVE CODE § 8-102 et seq.
### (As to all Defendants)

185.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation contained in the above paragraphs of this Complaint as fully set forth in this paragraph of the Complaint.

186.    Defendants discriminated against Plaintiff on the basis of her race (Black/African-American) in violation of the New York City Human Rights Law by treating her differently from and less favorably than similarly situated employees, and subjecting her to disparate working conditions and disparate terms and conditions.

187.    The discriminatory actions of Defendants were intentional, deliberate, willful, malicious, reckless, invidious, repugnant and conducted in callous disregard of the rights of Plaintiff.

188.    Plaintiff has been harmed and continues to suffer harm as a direct and proximate result of Defendants' unlawful conduct.  Plaintiff suffered and continues to suffer a substantial loss of income including, but not limited to wages, social security and other benefits.

189.    Additionally, Plaintiff has suffered the indignity of discrimination, the invasion of the right to be free from discrimination, and great humiliation, which has resulted in serious stress and mental anguish.

190.    Defendants' conduct has caused outrage, severe anxiety, harm to her employability and earning capacity, painful embarrassment, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life

## COUNT V

**HOSTILE WORK ENVIRONMENT**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**42 U.S.C. § 2000e et seq.**
**(As to Quality Bistro and Quality Branded)**

191.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation contained in the above paragraphs of this Complaint as fully set forth in this paragraph of the Complaint.

192.    Plaintiff found Defendants' actions shocking, abhorrent and threatening.

193.    Defendants discriminated against Plaintiff on the basis of her race, color and sexual orientation in violation of Title VII by treating her differently from and less favorably, than similarly situated employees, and subjecting her to disparate working conditions and disparate terms and conditions.

194.    The discriminatory actions of Defendants were intentional, deliberate, willful, malicious, reckless, invidious, repugnant and conducted in callous disregard of the rights of Plaintiff.

195.    Plaintiff has been harmed and continues to suffer harm as a direct and proximate result of Defendants' unlawful conduct.  Plaintiff suffered and continues to suffer a substantial loss of income including, but not limited to wages, social security and other benefits.

196.    Additionally, Plaintiff has suffered the indignity of discrimination, the invasion of the right to be free from discrimination, and great humiliation, which has resulted in serious stress and mental anguish.

197.    Defendants' conduct has caused outrage, severe anxiety, harm to her employability and earning capacity, painful embarrassment, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

## COUNT VI

**HOSTILE WORK ENVIRONMENT**
**NEW YORK STATE HUMAN RIGHTS LAW**
**N.Y. Exec. Law § 296 et seq.**
**(As to all Defendants)**

198.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation contained in the above paragraphs of this Complaint as fully set forth in this paragraph of the Complaint.

199.    Plaintiff found Defendants' actions shocking, abhorrent and threatening.

200.    Defendants discriminated against Plaintiff on the basis of her race, color and sexual orientation in violation of the New York State Human Rights Law by subjecting her to inferior terms, conditions and privileges in employment.

201.    The discriminatory actions of Defendants were intentional, deliberate, willful, malicious, reckless, invidious, repugnant and conducted in callous disregard of the rights of Plaintiff.

202.    Plaintiff has been harmed and continues to suffer harm as a direct and proximate result of Defendants' unlawful conduct.  Plaintiff suffered and continues to suffer a substantial loss of income including, but not limited to wages, social security and other benefits.

203.    Additionally, Plaintiff has suffered the indignity of discrimination, the invasion of the

right to be free from discrimination, and great humiliation, which has resulted in serious stress and mental anguish.

204. Defendants' conduct has caused outrage, severe anxiety, harm to her employability and earning capacity, painful embarrassment, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

## COUNT VII

### HOSTILE WORK ENVIRONMENT
### NEW YORK CITY HUMAN RIGHTS LAW
### ADMINISTRATIVE CODE § 8-102 et seq.
### (As to all Defendants)

205. Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation contained in the above paragraphs of this Complaint as fully set forth in this paragraph of the Complaint.

206. Plaintiff found Defendants' actions shocking, abhorrent and threatening.

207. Defendants discriminated against Plaintiff on the basis of her race, color and sexual orientation in violation of the New York City Human Rights Law by treating her less well than other employees because of her protected characteristics.

208. The discriminatory actions of Defendants were intentional, deliberate, willful, malicious, reckless, invidious, repugnant and conducted in callous disregard of the rights of Plaintiff.

209. Plaintiff has been harmed and continues to suffer harm as a direct and proximate result of Defendants' unlawful conduct. Plaintiff suffered and continues to suffer a substantial loss of income including, but not limited to wages, social security and other benefits.

210. Additionally, Plaintiff has suffered the indignity of discrimination, the invasion of the right to be free from discrimination, and great humiliation, which has resulted in serious stress

and mental anguish.

211. Defendants' conduct has caused outrage, severe anxiety, harm to her employability and earning capacity, painful embarrassment, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

<u>COUNT VIII</u>

**SEXUAL HARASSMENT IN VIOLATION
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,
42 U.S.C. § 2000e et seq.
(As to Quality Bistro and Quality Branded)**

212. Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation contained in the above paragraphs of this Complaint as fully set forth in this paragraph of the Complaint.

213. Plaintiff found Defendants' actions shocking, abhorrent and threatening.

214. Defendants discriminated against Plaintiff on the basis of her sex in violation of Title VII by subjecting Plaintiff to, or failed to prevent, remedy and/or stop unwelcomed, unwanted and unconsented harassing contact, conduct and comments made towards Plaintiff.

215. Defendants discriminated against Plaintiff on the basis of her sex by treating her differently from and less favorably, than similarly situated employees, and subjecting her to disparate working conditions and disparate terms and conditions.

216. Defendants are liable to Plaintiff for the unlawful sexual harassment.

217. The discriminatory actions of Defendants were intentional, deliberate, willful, malicious, reckless, invidious, repugnant and conducted in callous disregard of the rights of Plaintiff.

218. Plaintiff has been harmed and continues to suffer harm as a direct and proximate result of Defendants' unlawful conduct.  Plaintiff suffered and continues to suffer a substantial loss of

income including, but not limited to wages, social security and other benefits.

219. Additionally, Plaintiff has suffered the indignity of discrimination, the invasion of the right to be free from discrimination, and great humiliation, which has resulted in serious stress and mental anguish.

220. Defendants' conduct has caused outrage, severe anxiety, harm to her employability and earning capacity, painful embarrassment, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

## COUNT IX

### SEXUAL HARASSMENT IN VIOLATION
### NEW YORK STATE HUMAN RIGHTS LAW
### N.Y. Exec. Law § 296 et seq.
### (As to all Defendants)

221. Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation contained in the above paragraphs of this Complaint as fully set forth in this paragraph of the Complaint.

222. Plaintiff found Defendants' actions shocking, abhorrent and threatening.

223. Defendants discriminated against Plaintiff on the basis of her sex in violation of the New York State Human Rights Law by subjecting Plaintiff to, or failed to prevent, remedy and/or stop unwelcomed, unwanted and unconsented harassing contact, conduct and comments made towards Plaintiff.

224. Defendants discriminated against Plaintiff on the basis of her sex by subjecting her to inferior terms, conditions and privileges in employment.

225. The discriminatory actions of Defendants were intentional, deliberate, willful, malicious, reckless, invidious, repugnant and conducted in callous disregard of the rights of Plaintiff.

226.    Plaintiff has been harmed and continues to suffer harm as a direct and proximate result of Defendants' unlawful conduct.  Plaintiff suffered and continues to suffer a substantial loss of income including, but not limited to wages, social security and other benefits.

227.    Additionally, Plaintiff has suffered the indignity of discrimination, the invasion of the right to be free from discrimination, and great humiliation, which has resulted in serious stress and mental anguish.

228.    Defendants' conduct has caused outrage, severe anxiety, harm to her employability and earning capacity, painful embarrassment, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

## COUNT X

### SEXUAL HARASSMENT IN VIOLATION OF
### NEW YORK CITY HUMAN RIGHTS LAW
### ADMINISTRATIVE CODE § 8-102 et seq.

229.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation contained in the above paragraphs of this Complaint as fully set forth in this paragraph of the Complaint.

230.    Plaintiff found Defendants' actions shocking, abhorrent and threatening.

231.    Defendants discriminated against Plaintiff on the basis of her sex in violation of the New York City Human Rights Law by subjecting Plaintiff to, or failed to prevent, remedy and/or stop unwelcomed, unwanted and unconsented harassing contact, conduct and comments made towards Plaintiff.

232.    Defendants discriminated against Plaintiff on the basis of her sex by treating her less well than other employees because of her protected characteristics.

233.    The  discriminatory  actions  of  Defendants  were  intentional,  deliberate,  willful,

malicious, reckless, invidious, repugnant and conducted in callous disregard of the rights of Plaintiff.

234.   Plaintiff has been harmed and continues to suffer harm as a direct and proximate result of Defendants' unlawful conduct.  Plaintiff suffered and continues to suffer a substantial loss of income including, but not limited to wages, social security and other benefits.

235.   Additionally, Plaintiff has suffered the indignity of discrimination, the invasion of the right to be free from discrimination, and great humiliation, which has resulted in serious stress and mental anguish.

236.   Defendants' conduct has caused outrage, severe anxiety, harm to her employability and earning capacity, painful embarrassment, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

## COUNT XI

**DISABILITY DISCRIMINATION IN VIOLATION**
**AMERICANS WITH DISABILITY ACT**
**42 U.S.C. § 12111 et seq.**
**(As to Quality Bistro and Quality Branded)**

237.   Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation contained in the above paragraphs of this Complaint as fully set forth in this paragraph of the Complaint.

238.   The discriminatory actions of Defendants were invidious and repugnant.

239.   Plaintiff found Defendants' actions shocking, abhorrent and threatening.

240.   Defendants terminated Plaintiff shortly after she became disabled.

241.   Defendants discriminated against Plaintiff on the basis of her disability in violation of the Americans with Disability Act.

242.   Plaintiff sought a reasonable accommodation.

243.    Defendants refused to engage in the interactive process.

244.    Defendants discriminated against Plaintiff on the basis of her disability in violation of the Americans with Disability Act by refusing to provide Plaintiff with a reasonable accommodation.

245.    The discriminatory actions of Defendants were intentional, deliberate, willful, malicious, reckless, invidious, repugnant and conducted in callous disregard of the rights of Plaintiff.

246.    Plaintiff has been harmed and continues to suffer harm as a direct and proximate result of Defendants' unlawful conduct.  Plaintiff suffered and continues to suffer a substantial loss of income including, but not limited to wages, social security and other benefits.

247.    Additionally, Plaintiff has suffered the indignity of discrimination, the invasion of the right to be free from discrimination, and great humiliation, which has resulted in serious stress and mental anguish.

248.    Defendants' conduct has caused outrage, severe anxiety, harm to her employability and earning capacity, painful embarrassment, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

### COUNT XII

**DISABILITY DISCRIMINATION IN VIOLATION**
**NEW YORK STATE HUMAN RIGHTS LAW**
**N.Y. Exec. Law § 296 et seq.**
**(As to Quality Bistro and Quality Branded)**

249.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation contained in the above paragraphs of this Complaint as fully set forth in this paragraph of the Complaint.

250.    The discriminatory actions of Defendants were invidious and repugnant.

251. Defendants terminated Plaintiff shortly after she became disabled.

252. Defendants discriminated against Plaintiff on the basis of her disability in violation of the New York State Human Rights Law.

253. Plaintiff sought a reasonable accommodation.

254. Defendants refused to engage in the interactive process.

255. Defendants discriminated against Plaintiff on the basis of her disability in violation of the New York State Human Rights Law by refusing to provide Plaintiff with a reasonable accommodation.

256. The discriminatory actions of Defendants were intentional, deliberate, willful, malicious, reckless, invidious, repugnant and conducted in callous disregard of the rights of Plaintiff.

257. Plaintiff has been harmed and continues to suffer harm as a direct and proximate result of Defendants' unlawful conduct.  Plaintiff suffered and continues to suffer a substantial loss of income including, but not limited to wages, social security and other benefits.

258. Additionally, Plaintiff has suffered the indignity of discrimination, the invasion of the right to be free from discrimination, and great humiliation, which has resulted in serious stress and mental anguish.

259. Defendants' conduct has caused outrage, severe anxiety, harm to her employability and earning capacity, painful embarrassment, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

## COUNT XIII

**DISABILITY DISCRIMINATION IN VIOLATION OF
NEW YORK CITY HUMAN RIGHTS LAW
ADMINISTRATIVE CODE § 8-102 et seq.
(As to Quality Bistro and Quality Branded)**

260.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation contained in the above paragraphs of this Complaint as fully set forth in this paragraph of the Complaint.

261.    The discriminatory actions of Defendants were invidious and repugnant.

262.    Defendants terminated Plaintiff shortly after she became disabled.

263.    Defendants discriminated against Plaintiff on the basis of her disability in violation of the New York City Human Rights Law.

264.    Plaintiff sought a reasonable accommodation.

265.    Defendants refused to engage in the cooperative dialogue.

266.    Defendants discriminated against Plaintiff on the basis of her disability in violation of the New York City Human Rights Law by refusing to provide Plaintiff with a reasonable accommodation.

267.    The discriminatory actions of Defendants were intentional, deliberate, willful, malicious, reckless, invidious, repugnant and conducted in callous disregard of the rights of Plaintiff.

268.    Plaintiff has been harmed and continues to suffer harm as a direct and proximate result of Defendants' unlawful conduct.  Plaintiff suffered and continues to suffer a substantial loss of income including, but not limited to wages, social security and other benefits.

269.    Additionally, Plaintiff has suffered the indignity of discrimination, the invasion of the right to be free from discrimination, and great humiliation, which has resulted in serious stress and mental anguish.

270.    Defendants' conduct has caused outrage, severe anxiety, harm to her employability and earning capacity, painful embarrassment, damage to her good reputation, disruption of her

personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

## COUNT XIV

### RETALIATION IN VIOLATION
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,
### 42 U.S.C. § 2000e et seq.
### (As to Quality Bistro and Quality Branded)

271. Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation contained in the above paragraphs of this Complaint as fully set forth in this paragraph of the Complaint.

272. The discriminatory actions of Defendants were invidious and repugnant.

273. Plaintiff engaged in protected activity by complaining of her unlawful treatment and opposing discrimination.

274. Plaintiff suffered retaliation and harm because of her protected activity, in violation of Title VII.

275. The discriminatory actions of Defendants were intentional, deliberate, willful, malicious, reckless, invidious, repugnant and conducted in callous disregard of the rights of Plaintiff.

276. Plaintiff has been harmed and continues to suffer harm as a direct and proximate result of Defendants' unlawful conduct. Plaintiff suffered and continues to suffer a substantial loss of income including, but not limited to wages, social security and other benefits.

277. Additionally, Plaintiff has suffered the indignity of discrimination, the invasion of the right to be free from discrimination, and great humiliation, which has resulted in serious stress and mental anguish.

278. Defendants' conduct has caused outrage, severe anxiety, harm to her employability and earning capacity, painful embarrassment, damage to her good reputation, disruption of her

personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

## COUNT XV

### RETALIATION IN VIOLATION
### 42 U.S.C. § 1981
### (As to Quality Bistro and Quality Branded)

279.   Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation contained in the above paragraphs of this Complaint as fully set forth in this paragraph of the Complaint.

280.   The discriminatory actions of Defendants were invidious and repugnant.

281.   Plaintiff engaged in protected activity by complaining of her unlawful treatment and opposing discrimination.

282.   Plaintiff suffered retaliation and harm because of her protected activity, in violation of 42 U.S.C. § 1981.

283.   The discriminatory actions of Defendants were intentional, deliberate, willful, malicious, reckless, invidious, repugnant and conducted in callous disregard of the rights of Plaintiff.

284.   Plaintiff has been harmed and continues to suffer harm as a direct and proximate result of Defendants' unlawful conduct.  Plaintiff suffered and continues to suffer a substantial loss of income including, but not limited to wages, social security and other benefits.

285.   Additionally, Plaintiff has suffered the indignity of discrimination, the invasion of the right to be free from discrimination, and great humiliation, which has resulted in serious stress and mental anguish.

286.   Defendants' conduct has caused outrage, severe anxiety, harm to her employability and earning capacity, painful embarrassment, damage to her good reputation, disruption of her

personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

## COUNT XVI

### RETALIATION IN VIOLATION OF
### AMERICANS WITH DISABILITY ACT
### 42 U.S.C. § 12111 et seq.
### (As to Quality Bistro and Quality Branded)

287.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation contained in the above paragraphs of this Complaint as fully set forth in this paragraph of the Complaint.

288.    The discriminatory actions of Defendant were invidious and repugnant.

289.    Plaintiff engaged in protected activity by requesting medical leave as a reasonable accommodation due to her disability.

290.    Plaintiff suffered retaliation and harm because of her protected activity, in violation of the ADA.

291.    The discriminatory actions of Defendant were intentional, deliberate, willful, malicious, reckless, invidious, repugnant and conducted in callous disregard of the rights of Plaintiff.

292.    Plaintiff has been harmed and continues to suffer harm as a direct and proximate result of Defendant's unlawful conduct.  Plaintiff suffered and continues to suffer a substantial loss of income including, but not limited to wages, social security and other benefits.

293.    Additionally, Plaintiff has suffered the indignity of discrimination, the invasion of the right to be free from discrimination, and great humiliation, which has resulted in serious stress and mental anguish.

294.    Defendant's conduct has caused outrage, severe anxiety, harm to her employability and earning capacity, painful embarrassment, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

## COUNT XVII

**RETALIATION IN VIOLATION OF
NEW YORK STATE HUMAN RIGHTS LAW
N.Y. Exec. Law § 296 et seq.
(As to all Defendants)**

295. Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation contained in the above paragraphs of this Complaint as fully set forth in this paragraph of the Complaint.

296. The discriminatory actions of Defendants were invidious and repugnant.

297. Plaintiff engaged in protected activity by complaining of her unlawful treatment, opposing discrimination, and by requesting medical leave as a reasonable accommodation due to her disability.

298. Plaintiff suffered retaliation and harm because of her protected activity, in violation of the New York State Human Rights Law.

299. The discriminatory actions of Defendants were intentional, deliberate, willful, malicious, reckless, invidious, repugnant and conducted in callous disregard of the rights of Plaintiff.

300. Plaintiff has been harmed and continues to suffer harm as a direct and proximate result of Defendants' unlawful conduct. Plaintiff suffered and continues to suffer a substantial loss of income including, but not limited to wages, social security and other benefits.

301. Additionally, Plaintiff has suffered the indignity of discrimination, the invasion of the right to be free from discrimination, and great humiliation, which has resulted in serious stress and mental anguish.

302. Defendants' conduct has caused outrage, severe anxiety, harm to her employability and earning capacity, painful embarrassment, damage to her good reputation, disruption of her

personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

## COUNT XVIII

### RETALIATION IN VIOLATION OF
### NEW YORK CITY HUMAN RIGHTS LAW
### ADMINISTRATIVE CODE § 8-102 et seq.
### (As to all Defendants)

303. Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation contained in the above paragraphs of this Complaint as fully set forth in this paragraph of the Complaint.

304. The discriminatory actions of Defendants were invidious and repugnant.

305. Plaintiff engaged in protected activity by complaining of her unlawful treatment, opposing discrimination, and by requesting medical leave as a reasonable accommodation due to her disability.

306. Plaintiff suffered retaliation and harm because of her protected activity, in violation of the New York City Human Rights Law.

307. The discriminatory actions of Defendants were intentional, deliberate, willful, malicious, reckless, invidious, repugnant and conducted in callous disregard of the rights of Plaintiff.

308. Plaintiff has been harmed and continues to suffer harm as a direct and proximate result of Defendants' unlawful conduct.  Plaintiff suffered and continues to suffer a substantial loss of income including, but not limited to wages, social security and other benefits.

309. Additionally, Plaintiff has suffered the indignity of discrimination, the invasion of the right to be free from discrimination, and great humiliation, which has resulted in serious stress and mental anguish.

310. Defendants' conduct has caused outrage, severe anxiety, harm to her employability and

earning capacity, painful embarrassment, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

## COUNT XIX

**AIDING AND ABETTING DISCRIMINATION IN VIOLATION OF
NEW YORK STATE HUMAN RIGHTS LAW
N.Y. Exec. Law § 296 et seq.
(As to Rodrigo Rodriguez)**

311.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation contained in the above paragraphs of this Complaint as fully set forth in this paragraph of the Complaint.

312.    Defendant acted to aid and abet the discrimination and retaliation complained of herein in violation of the New York State Human Rights Law.

313.    The discriminatory actions of Defendant were intentional, deliberate, willful, malicious, reckless, invidious, repugnant and conducted in callous disregard of the rights of Plaintiff.

314.    Plaintiff has been harmed and continues to suffer harm as a direct and proximate result of Defendant's unlawful conduct.  Plaintiff suffered and continues to suffer a substantial loss of income including, but not limited to wages, social security and other benefits.

315.    Additionally, Plaintiff has suffered the indignity of discrimination, the invasion of the right to be free from discrimination, and great humiliation, which has resulted in serious stress and mental anguish.

316.    Defendant's conduct has caused outrage, severe anxiety, harm to her employability and earning capacity, painful embarrassment, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

## COUNT XX

### AIDING AND ABETTING IN VIOLATION OF
### NEW YORK CITY HUMAN RIGHTS LAW
### ADMINISTRATIVE CODE § 8-102 et seq.
### (As to Rodrigo Rodriguez)

317.    Plaintiff repeats, reiterates, re-alleges and incorporates each and every allegation contained in the above paragraphs of this Complaint as fully set forth in this paragraph of the Complaint.

318.    Defendant acted to aid and abet the discrimination and retaliation complained of herein in violation of the New York City Human Rights Law.

319.    The discriminatory actions of Defendant were intentional, deliberate, willful, malicious, reckless, invidious, repugnant and conducted in callous disregard of the rights of Plaintiff.

320.    Plaintiff has been harmed and continues to suffer harm as a direct and proximate result of Defendant's unlawful conduct.  Plaintiff suffered and continues to suffer a substantial loss of income including, but not limited to wages, social security and other benefits.

321.    Additionally, Plaintiff has suffered the indignity of discrimination, the invasion of the right to be free from discrimination, and great humiliation, which has resulted in serious stress and mental anguish.

322.    Defendant's conduct has caused outrage, severe anxiety, harm to her employability and earning capacity, painful embarrassment, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

### JURY DEMAND

323.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, respectfully requests a judgment in her favor and against the Defendants as follows:

1) Declare that the acts and conducts of Defendants are unlawful and violate 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, 42 U.S.C. § 12111 et seq., N.Y Exec Law § 296 et seq. and Administrative Code § 8-102 et seq.;

2) Award Plaintiff the value of all compensation and benefits lost as a result of Defendants' unlawful conduct;

3) Award Plaintiff the value of all compensation and benefits she will lose in the future as a result of Defendants' unlawful conduct;

4) Award Plaintiff compensatory damages, including but not limited to damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses;

5) Award Plaintiff punitive damages due to Defendants' malicious conduct and/or their reckless or callous indifference to the statutorily protected rights of Plaintiff;

6) Award Plaintiff prejudgment interest;

7) Award Plaintiff attorneys fees, costs, and disbursements; and

8) Award Plaintiff such as other make whole equitable, injunctive, and legal relief as this Court deems just and proper.

Dated: May 27, 2025
       Brooklyn, New York

**LF LAW PLLC**

Luwick Francois, Esq.
147 Prince Street
Brooklyn, NY 11201
LFrancois@LFLawPLLC.com
(347) 334–9546